OCKVSEHP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                         24 Cr. 46 (AT)

SHIKHA SEHGAL,

           Defendant.           Plea

------------------------------x

                                 New York, N.Y.
                                 December 20, 2024
                                 3:07 p.m.

Before:

                    HON. ANALISA TORRES,

                                 District Judge

                       APPEARANCES

EDWARD Y. KIM
     Acting United States Attorney for the
     Southern District of New York
JANE CHONG
     Assistant United States Attorney

YAN KATSNELSON
     Attorney for Defendant

OCKVSEHP

1          THE COURT:  Good afternoon.  We're here in the matter

2    of the *United States v. Shikha Sehgal.*

3          Would you make your appearances, please.

4          MS. CHONG:  Good afternoon, your Honor.

5          AUSA Jane Chong, for the government.

6          MR. KATSNELSON:  Good afternoon, your Honor.

7          Yan Katsnelson, on behalf of Ms. Sehgal, standing to

8    my right.

9          THE COURT:  Please be seated.

10         MR. KATSNELSON:  Thank you, Judge.

11         THE COURT:  I'm told, Ms. Sehgal, that you would like

12   to change your plea and to enter a plea of guilty, is that

13   right?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Before deciding whether to accept your

16   guilty plea, I'm going to ask you some questions.  It is very

17   important that you answer my questions honestly and completely.

18   The purpose of these proceedings is to make sure that you

19   understand your rights, to decide whether you're pleading

20   guilty of your own free will, and to make sure that you're

21   pleading guilty because you are guilty and not for another

22   reason.  You understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  If you don't understand any of my

25   questions or if you want at any time to consult your lawyer,

OCKVSEHP

1   please say so; because it is important that you understand

2   every question before you answer.

3          Ms. Dimenstein, please swear the defendant.

4          (Defendant sworn)

5          THE COURT:  Ms. Sehgal, you understand that you're now

6   under oath; and if you answer any of my questions falsely, you

7   may be prosecuted for perjury?

8          THE DEFENDANT:  Yes.

9          THE COURT:  What is your full name?

10         THE DEFENDANT:  Shikha Sehgal.

11         THE COURT:  How old are you?

12         THE DEFENDANT:  45.

13         THE COURT:  How far did you go in school?

14         THE DEFENDANT:  I did my graduation from India.

15         THE COURT:  And what level was that, high school,

16  college?

17         THE DEFENDANT:  College level.

18         THE COURT:  And what did you study?

19         THE DEFENDANT:  Marketing.

20         THE COURT:  Have you ever been treated or hospitalized

21  for mental illness?

22         THE DEFENDANT:  No.

23         THE COURT:  Have you ever been treated or hospitalized

24  for any type of addiction?

25         THE DEFENDANT:  No.

OCKVSEHP

1                 THE COURT:  Including drugs or alcohol?

2                 THE DEFENDANT:  No.

3                 THE COURT:  Are you now or have you recently been

4      under the care of any kind of doctor or psychiatrist?

5                 THE DEFENDANT:  No.

6                 THE COURT:  Have you taken any drugs, medicine or

7      pills, or drunk any alcoholic beverages in the last 24 hours?

8                 THE DEFENDANT:  No.

9                 THE COURT:  Is there any medication that you're

10     supposed to be taking that you did not take?

11                THE DEFENDANT:  No.

12                THE COURT:  Is your mind clear today?

13                THE DEFENDANT:  Yes.

14                THE COURT:  You understand what's happening in this

15     proceeding?

16                THE DEFENDANT:  Yes.

17                THE COURT:  Mr. Katsnelson, have you discussed this

18     matter with your client?

19                MR. KATSNELSON:  I have, Judge, yes.

20                THE COURT:  Does she understand the rights that she

21     would be waiving by pleading guilty?

22                MR. KATSNELSON:  She does, Judge.

23                THE COURT:  Is she capable of understanding the nature

24     of these proceedings?

25                MR. KATSNELSON:  She is.

OCKVSEHP

1          THE COURT:  Does either attorney have any doubt as to

2     the defendant's competence to plead at this time?

3          MS. CHONG:  The government does not, your Honor.

4          MR. KATSNELSON:  The defense does not, Judge.

5          THE COURT:  On the basis of Ms. Sehgal's responses to

6     my questions, my observations of her demeanor here in court,

7     and the representations of counsel, I find that the defendant

8     is fully competent to enter an informed plea of guilty at this

9     time.

10          Ms. Sehgal, have you received a copy of the indictment

11     in this case?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you read it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you want me to read it to you now in

16     open court or do you waive its public reading?

17          THE DEFENDANT:  We can waive.

18          THE COURT:  You understand that you're charged with

19     conspiring to commit wire fraud, in violation of 18 United

20     States Code, Sections 1343 and 1349?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Have you had enough time and opportunity

23     to discuss with your attorney the charge against you --

24          THE DEFENDANT:  Yes.

25          THE COURT:  -- and any possible defenses that you may

OCKVSEHP

1   have?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Has he told you the consequences of

4   pleading guilty?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And you're satisfied with your attorney's

7   representation of you?

8            THE DEFENDANT:  Yes.

9            THE COURT:  I'm now going to explain certain

10  constitutional rights that you have.  These are rights that you

11  will be giving up if you enter a guilty plea.  Please listen

12  carefully to what I'm about to say.  And if you don't

13  understand something, stop me, and your attorney or I will

14  explain the matter more fully.

15           Under the Constitution and laws of the United States,

16  you have a right to plead not guilty to the charge.

17           Do you understand?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And if you plead not guilty, you would be

20  entitled under the Constitution to a speedy and public trial by

21  a jury.  You understand?

22           THE DEFENDANT:  Yes.

23           THE COURT:  At the trial, you would be presumed to be

24  innocent and the government would be required to prove you

25  guilty beyond a reasonable doubt before you could be found

OCKVSEHP

 1   guilty.  That means you would not have to prove that you were

 2   innocent and you could not be convicted unless a jury of 12

 3   people unanimously agreed that you are guilty beyond a

 4   reasonable doubt.  You understand?

 5               THE DEFENDANT:  Yes.

 6               THE COURT:  At the trial and at every stage of your

 7   case, you will be entitled to be represented by a lawyer; and

 8   if you could not afford one, one would be appointed at public

 9   expense free of charge to represent you.  You understand?

10               THE DEFENDANT:  Yes.

11               THE COURT:  During a trial, the witnesses for the

12   prosecution would have to come to court and testify in your

13   presence, where you could see and hear them, and your lawyer

14   could cross-examine them and, if you wanted, your lawyer could

15   offer evidence on your behalf.  You will be able to use the

16   Court's power to compel witnesses to come to court to testify

17   in your defense, even if they did not want to come.

18               You understand?

19               THE DEFENDANT:  Yes.

20               THE COURT:  At trial, you would have the right to

21   testify if you wanted to, but you would also have the right not

22   to testify.  And if you chose not to testify, that could not be

23   used against you in any way.  No inference or suggestion of

24   guilt could be made from the fact that you did not testify.

25               You understand?

OCKVSEHP

1           THE DEFENDANT:  Yes.

2           THE COURT:  If you are convicted at trial, you would

3      have the right to appeal that verdict to a higher court.

4           You understand?

5           THE DEFENDANT:  Yes.

6           THE COURT:  As I said before, you have the right to

7      plead not guilty.  Even right now, even as you sit here for the

8      purpose of entering a guilty plea, you have the right to change

9      your mind, persist in your not-guilty plea, and go to trial.

10          But if you do plead guilty and I accept your plea,

11     you'll be giving up your right to trial and all the other

12     rights that go with it that I have just described.  If you

13     plead guilty, there will be no trial; all that will remain to

14     be done is to impose sentence.  I will enter a judgment of

15     guilty and sentence you on the basis of your guilty plea after

16     considering whatever submissions I get from you, your lawyer,

17     and the government, as well as a presentence report prepared by

18     the probation department.  Do you understand?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If you plead guilty, you will also have to

21     give up your right not to incriminate yourself, because I will

22     ask you questions about what you did in order to satisfy myself

23     that you are guilty as charged.  You understand?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You understand each and every one of these

OCKVSEHP

1    rights?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Ms. Sehgal, are you willing to give up

4    your right to a trial and the other rights that I have just

5    described?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Ms. Sehgal, you said before that you have

8    read the indictment containing the charge against you.  I

9    understand that you intend to plead guilty to Count Two,

10   conspiracy to commit wire fraud; is that right?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Would the government please state the

13   elements of the offense in question.

14           MS. CHONG:  Your Honor, Count Two, conspiracy to

15   commit wire fraud affecting a financial institution, comes with

16   the following elements:

17           Two or more persons in some way or manner agreed to

18   try to accomplish a common and unlawful plan to commit a fraud

19   scheme listed in Title 18, Chapter 63; and the defendant knew

20   the unlawful purpose of the plan and willfully joined it.

21   Here, that plan was to commit wire fraud, in violation of 18

22   U.S.C. 1343.

23           For reference, the government further notes the

24   elements of the underlying wire fraud scheme:

25           First, the defendant devised a scheme to defraud or

OCKVSEHP

1   obtain money by materially false or fraudulent pretenses,

2   representations, or promises.

3           Second, the defendant acted with intent to defraud.

4           Third, in advancing the scheme, the defendant

5   transmitted a wire in interstate commerce.

6           And fourth, the fraud scheme here affected a financial

7   institution.

8           THE COURT:  Ms. Sehgal, do you understand that if you

9   were to go to trial, the government would have to prove all of

10  those elements beyond a reasonable doubt, except for venue,

11  which it would need to prove by a preponderance of the

12  evidence?

13          THE DEFENDANT:  Yes.

14          THE COURT:  I'm going to tell you now about the

15  maximum penalties.  "The maximum penalty" means the greatest

16  punishment that could possibly be imposed; it doesn't mean that

17  is what you necessarily will receive.  But you have to

18  understand that by pleading guilty you are exposing yourself to

19  the possibility of receiving any combination of punishments up

20  to the maximums that I'm about to describe.  You understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  First, with regard to your liberty, the

23  maximum term of imprisonment for this crime is 30 years, which

24  could be followed by up to five years of supervised release.

25          "Supervised release" means that if you are sentenced

OCKVSEHP

1    to prison, after you are released, you will be subject to

2    supervision by the probation department.  There will be rules

3    of supervised release that you'll have to follow.  And if you

4    violate the rules, you can be returned to prison without a jury

5    trial to serve additional time, even beyond your original

6    sentence.  You understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You should also understand that parole has

9    been abolished in the federal system; and if you are sentenced

10   to prison, you will not be released early on parole, although

11   there is limited opportunity to earn credit for good behavior.

12             You understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  In addition to these restrictions on your

15   liberty, a maximum punishment also includes certain financial

16   penalties.

17             The maximum allowable fine is a million dollars or

18   twice the gain you received from the crime or twice the loss to

19   any victims, whichever is greater.  I'm also required to impose

20   a mandatory special assessment of $100.  In addition, I must

21   order restitution to any persons or entities injured as a

22   result of your criminal conduct.

23             The indictment also includes a forfeiture allegation

24   which I will read to you now.

25             As a result of committing the offense alleged in Count

OCKVSEHP

1    Two of the indictment, you shall forfeit to the United States,

2    pursuant to 18 United States Code, Section 982 (a)(2)(A), any

3    and all property constituting or derived from any proceeds

4    obtained directly or indirectly as a result of the commission

5    of said offense, including, but not limited to, a sum of money

6    in United States currency representing the amount of proceeds

7    traceable to the commission of said offense.

8           You understand that these are the maximum penalties

9    for Count Two?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Please understand that I'm just telling

12   you about the punishments that are part of the sentence.  Being

13   convicted of a felony, even if by a plea of guilty, may have

14   additional consequences.

15          If you are a U.S. citizen, you may lose certain

16   valuable civil rights as a result of your guilty plea, such as

17   the right to vote, the right to hold public office, the right

18   to serve on a jury, and the right to possess a firearm.  If you

19   are not a U.S. citizen, you may be deported from the United

20   States as a result of your guilty plea and, in certain

21   circumstances, deportation is mandatory.

22          In imposing sentence, federal judges are required to

23   consider the recommendations of the federal sentencing

24   guidelines.  The guidelines are a complicated set of rules for

25   determining an appropriate sentence.  Judges must pay attention

OCKVSEHP

1   to the guidelines in determining a sentence; but, in the end,

2   the judge is required to give the sentence that she believes

3   best satisfies the purposes of the criminal law, even if that

4   is higher or lower than the guidelines recommendation.

5         Have you discussed the sentencing guidelines with your

6   attorney?

7         THE DEFENDANT:  Yes.

8         THE COURT:  And do you understand that the guidelines

9   are only recommendations to the Court?

10         THE DEFENDANT:  Yes.

11         THE COURT:  I understand that there is a written plea

12   agreement that you have signed as a result?

13         THE DEFENDANT:  Yes.

14         THE COURT:  My law clerk will show you the plea

15   agreement dated September 4th, 2024, from Assistant United

16   States Attorney Jane Chong to your attorney, Yan Katsnelson.  I

17   will mark that as Court Exhibit No. 1.

18         Is that your signature that appeared on the last page

19   of the agreement?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You read it before you signed it?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You discussed it with your lawyer before

24   you signed it?

25         THE DEFENDANT:  Yes.

OCKVSEHP

1          THE COURT:  I realize it is a long document and

2    contains some technical legal language.  But after discussing

3    it with your lawyer, do you understand the terms of the

4    agreement?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Under the agreement, you're giving up the

7    right to withdraw your plea or challenge your conviction on a

8    few specific grounds which I'm about to describe.

9          First, under the agreement, you are giving up your

10   right to withdraw your plea or challenge your conviction on the

11   grounds that the government has failed to produce the following

12   categories of material as of the date of the signing of the

13   agreement:

14          Any material that it was required to produce during

15   discovery; statements of any government witness relating to the

16   subject matter about which the witness would be expected to

17   testify; material that could be used to impeach or attack the

18   testimony of any government witness; and material favorable to

19   you that could cast doubt on your guilt or reduce your

20   sentence, other than information establishing your factual

21   innocence.  You understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Second, under the agreement, you're also

24   giving up the right to withdraw your guilty plea and the right

25   to challenge your conviction or sentence based on any actual or

OCKVSEHP

```
1    perceived adverse immigration consequences, including

2    deportation resulting from the guilty plea and conviction.

3              So, for example, if you are deported following your

4    guilty plea and conviction, or if the government later turns

5    over material that would tend to cast doubt on your guilt,

6    other than material that establishes your innocence, you will

7    not be able to withdraw your plea or challenge your conviction

8    on those grounds.  You understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that you're giving up

11   the right to withdraw your guilty plea or challenge your

12   conviction --

13             THE DEFENDANT:  Yes.

14             THE COURT:  Withdrawn.  Withdrawn.

15             Did you willingly sign the agreement?

16             THE DEFENDANT:  Yes.

17             THE COURT:  You understand that if your attorney or

18   anyone else has attempted to predict what your sentence will

19   be, that the prediction could be wrong?

20             THE DEFENDANT:  Yes.

21             THE COURT:  I'm asking you this because no one, not

22   your attorney or the prosecutor, not even I can be sure now

23   what your sentence will be, because that sentence cannot be

24   determined until I receive the presentence report and until I

25   have decided what is the correct calculation of the range
```

OCKVSEHP

1    recommended by the guidelines and whether there is any basis

2    for not following the guidelines.  Even if your sentence is

3    different from what your attorney or anyone else has predicted,

4    even if it's different from what you expect, once you've

5    pleaded guilty, you will not be allowed to withdraw your plea.

6                You understand?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Other than what is contained in the plea

9    agreement, has anyone made any promise or offered you any

10   inducement to plead guilty?

11               THE DEFENDANT:  No.

12               THE COURT:  Has anyone threatened, bribed or forced

13   you to plead guilty?

14               THE DEFENDANT:  No.

15               THE COURT:  Has anyone made a promise to you as to

16   what your sentence will be?

17               THE DEFENDANT:  No.

18               THE COURT:  Now that you've been advised of the

19   charges against you, the possible penalties you face, and the

20   rights that you are giving up, is it still your intention to

21   plead guilty to Count Two, conspiracy to commit wire fraud?

22               THE DEFENDANT:  Yes.

23               THE COURT:  So with respect to Count Two of the

24   indictment, how do you plead?

25               THE DEFENDANT:  Guilty.

OCKVSEHP

1          THE COURT:  Now, tell me in your own words what you

2     did that makes you believe that you are guilty of that charge.

3          (Counsel conferred with defendant)

4          THE DEFENDANT:  So the co-defendant, which is Mr.

5     Singh and Mr. Grover, so when they were doing all this on the

6     things, I agreed to help them out like with all these fliers

7     and -- so I submitted the documents on their behalf by emails

8     and all this.

9          THE COURT:  So when did this happen?

10          THE DEFENDANT:  Happen 2020.

11          THE COURT:  Starting in 2020.

12          And how long did it go on for?

13          THE DEFENDANT:  Couple of months.

14          (Counsel conferred with defendant)

15          THE DEFENDANT:  July of 2021.

16          THE COURT:  And how is it that you agreed to do these

17     things with Mr. Grover and Mr. Singh?  In other words, did you

18     write letters to each other, did you have telephone

19     conversations, did you meet in person, did you send each other

20     texts or emails?

21          THE DEFENDANT:  It's by emails and text.

22          THE COURT:  You made your agreement with them by email

23     and text?

24          THE DEFENDANT:  Yeah.

25          THE COURT:  And you agreed to submit fraudulent

OCKVSEHP

1    documents?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And you agreed that those documents would

4    be submitted to banks?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And that was in order to obtain paycheck

7    protection program loans?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And so you submitted doctored bank

10   statements to banks?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And you claim that these were for various

13   businesses in order to get the paycheck protection program

14   loans for those businesses?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And did you call the banks and follow up

17   on the status of those loans?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And when you did these things, did you

20   know that what you were doing was wrong and illegal?

21             THE DEFENDANT:  Yes.

22             THE COURT:  AUSA Chong, are there any additional

23   questions you'd like me to put to the defendant?

24             MS. CHONG:  No, your Honor.

25             THE COURT:  And when you were doing this, where was

OCKVSEHP

1    this happening?

2              THE DEFENDANT:  By emails and by --

3              THE COURT:  No, I'm asking you did this happen in

4    Texas, was it --

5              THE DEFENDANT:  In New York.

6              THE COURT:  In New York City.  Where in New York?

7              THE DEFENDANT:  In New York, Long Island.

8              MS. CHONG:  Your Honor, as to venue, the government

9    can make a proffer.

10             The government proffers that at least one of

11   Ms. Sehgal's co-conspirators prepared fake PPP loan

12   documentation from Putnam County, New York, which is located in

13   the Southern District of New York.

14             In addition, the government has documentation showing

15   that Ms. Sehgal initially submitted a PPP loan application on

16   behalf of one of her companies to a bank in Manhattan that

17   confirmed it processes all payments through a server in

18   Manhattan.

19             In connection with that particular application, she

20   caused two micro deposits to be made into the company's

21   Manhattan-based bank account before canceling the application

22   and submitting a new application based on much larger payroll

23   figures, in agreement with one of her co-conspirators.

24             THE COURT:  And would you summarize, AUSA Chong, what

25   the government's evidence would be if the defendant were to go

OCKVSEHP

1    to trial.

2            MS. CHONG:  Yes, your Honor.

3            If the defendant were to proceed to trial, the

4    government's evidence would include the following:

5            Documentation as to the multiple payment protection

6    program loan applications submitted by the defendant and her

7    co-conspirators on behalf of companies owned or partially owned

8    by the co-conspirators, including the defendant; documentation

9    showing that most of those companies did not report payroll

10   information to the Social Security Administration or to the New

11   York Department of Labor; copies of checks used to move loan

12   money between a company owned by Mr. Grover and his various

13   clients' accounts, bearing memo lines designed to obscure the

14   nature of the payments.  For example, Ms. Sehgal sent

15   Mr. Grover checks with rent in the memo line, leading to

16   movement of loan funds.

17           Emails that Ms. Sehgal exchanged with Mr. Grover's

18   business email account in connection with the fraud; testimony

19   from custodians, including Google, regarding the location of

20   email servers outside of New York; testimony from bank

21   representatives regarding the receipt of various loan

22   applications and the movement of funds across states in

23   connection with the disbursement of those funds.

24           THE COURT:  Mr. Katsnelson, do you know of any valid

25   defense that would prevail at trial?

OCKVSEHP

1          MR. KATSNELSON:  No, Judge.  I've spoken now with

2     Ms. Sehgal at length about any defenses, and I do not believe

3     there would be any valid defenses to be put forth at trial.

4          THE COURT:  And do you know of any reason why your

5     client should not be permitted to plead guilty to Count Two?

6          MR. KATSNELSON:  No, I do not, Judge.

7          THE COURT:  And do both attorneys agree that there is

8     a sufficient factual predicate for a guilty plea?

9          MS. CHONG:  Yes, your Honor.

10          MR. KATSNELSON:  Yes, Judge.

11          THE COURT:  Does either attorney know of any reason

12     that I should not accept the defendant's plea of guilty?

13          MS. CHONG:  The government does not, your Honor.

14          MR. KATSNELSON:  Nothing here, Judge.

15          THE COURT:  Ms. Sehgal, because you acknowledge that

16     you are, indeed, guilty as charged of Count Two of the

17     indictment, because I'm satisfied that you know of your rights,

18     including your right to go to trial, and that you are aware of

19     the consequences of your plea, including the sentence which may

20     be imposed, and because I find that you are knowingly and

21     voluntarily pleading guilty, I accept your guilty plea and

22     enter a judgment of guilty on Count Two of the indictment.

23          The probation department will want to interview you in

24     connection with a presentence report that it will prepare.

25          Does defense counsel wish to be present for any

OCKVSEHP

1    interview in connection with that report?

2                   MR. KATSNELSON:  I do, Judge, yes.

3                   THE COURT:  Therefore, I direct that there shall not

4    be any interview unless counsel is present.

5                   Ms. Sehgal, if you choose to speak to the probation

6    department, make sure that anything that you say is truthful

7    and accurate.  I will read the report carefully.  It is

8    important to me in deciding what sentence to impose.

9                   You and your counsel have a right to examine the

10   report and to comment on it at the time of sentencing.  I urge

11   you to read it and discuss it with your lawyer.  If there are

12   any mistakes in it, point them out to your lawyer so that he

13   can point them out to me.

14                  Sentencing is set for April 21st, 2025, at 11 a.m.

15                  The government shall provide the probation officer

16   with its factual statement within seven days.  Defense counsel

17   must arrange for the defendant to be interviewed by the

18   probation department within the next two weeks.

19                  Defense submissions are due by April 7th, 2025; the

20   government's submissions are due by April 14.

21                  Is there any objection to continuing the present bail

22   conditions?

23                  MS. CHONG:  No, your Honor.

24                  MR. KATSNELSON:  No, Judge.

25                  THE COURT:  Does either attorney have any reason to

OCKVSEHP

1  believe that Ms. Sehgal is likely to flee or poses a danger to

2  the safety of any other person or the community if released?

3          MS. CHONG:  The government does not, your Honor.

4          MR. KATSNELSON:  Defense does not, Judge.

5          THE COURT:  I find by clear and convincing evidence

6  that Ms. Sehgal is not likely to flee or pose a danger to the

7  safety of any other person or the community if released.

8          Ms. Sehgal, all of the conditions on which you were

9  released up until now continue to apply.  A violation of any of

10  those conditions can have serious consequences, including

11  revocation of bail and prosecution for bail jumping.

12          You understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Are there any further applications?

15          MS. CHONG:  No, your Honor.

16          MR. KATSNELSON:  No, Judge.

17          THE COURT:  All right.  That concludes our hearing.

18          I wish all of you a happy holiday season.

19          MR. KATSNELSON:  Thank you very much, your Honor.

20          MS. CHONG:  Thank you, your Honor.

21                          *    *    *

22

23

24

25